UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

BEVERLY CRAIG
o/b/o DHD,

       Plaintiff,

v.                                                Case No.  1:15-cv-22-MP-GRJ

CAROLYN COLVIN,
Acting Commissioner of Social Security,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, the guardian of the minor DHD, appeals to this Court from a final decision of the Commissioner of Social Security denying an application for childhood Supplemental Security Income ("SSI") disability benefits.  ECF No. 1.  The Commissioner has answered, ECF No. 9, and both parties have filed briefs outlining their respective positions.  ECF Nos. 17, 18.  For the reasons discussed below, it is respectfully recommended that the Commissioner's decision be **AFFIRMED**.

## I.  PROCEDURAL HISTORY

Plaintiff's[1] application alleged disability beginning February 22, 2011, due to bipolar disorder, depression, and attention deficit hyperactivity disorder ("ADHD").  R. 137.  Plaintiff's application was denied initially and on reconsideration.  R. 59-64, 68-73.  Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") and the ALJ conducted a hearing on July 15, 2013.  R.  32-53.  On August 2, 2013, the ALJ issued a decision finding that although Plaintiff had the severe impairments of attention deficit hyperactivity disorder (ADHD), learning disorder, mood disorder, and substance abuse, he did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment or that functionally equaled the severity of the listings.  Specifically, the ALJ found that although Plaintiff had marked limitation in the functional domain of "interacting and relating with others," he did not have marked limitation in two functional domains, and therefore Plaintiff was not disabled.  R. 11-31.  The Appeals Council denied review, making the ALJ's hearing decision the final decision of the Commissioner.[2]  R. 1-7.

---

[1]  Even though this action is being brought by the grandmother on behalf of her minor grandson, the Court will refer to the minor claimant as the Plaintiff.

[2] See 20 C.F.R. § 416.1481 (2003).

The instant appeal followed. Plaintiff raises one issue for review: Whether substantial evidence supports the ALJ's decision that Plaintiff did not have marked limitation in a second functional domain, "attending and completing tasks." ECF No. 17.

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[3] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[4] In reviewing the Commissioner's decision, the district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5]

---

[3] See 42 U.S.C. § 405(g) (2003).

[4] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[5] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

Congress has empowered the district court to affirm, modify, or reverse the decision of the Commissioner, with or without remanding the cause.[6] Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[7] The district court will reverse a Commissioner's decision on plenary review, however, if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[8] Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.[9]

---

[6] 42 U.S.C. § 405(g) (sentence four).

[7] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[8] Keeton v. Dep't of Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[9] Bowen v. Heckler, 748 F.2d 629, 631, 636-37 (11th Cir. 1994).

The law considers a child disabled, for the purposes of children's SSI benefits, if that child has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[10] However, no child who "engages in substantial gainful activity . . . may be considered to be disabled."[11] A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."[12] The statute does not define "marked and severe functional limitations."

In determining the severity of impairments, the Commissioner must consider the combined effect and combined impact of all of the individual's impairments.[13] In determining the disability of a child, the Commissioner

---

[10] 42 U.S.C. § 1382c(a)(3)(C)(I) (2003).

[11] 42 U.S.C. § 1382c(a)(3)(C)(ii).

[12] 42 U.S.C. § 1382c(a)(3)(D).

[13] 42 U.S.C. § 1382c(a)(3)(G).

must make reasonable efforts to ensure that a qualified pediatrician or other specialist evaluates the case.[14]

The Commissioner has promulgated regulations governing eligibility for SSI benefits.[15] In accordance with Congressional intent, the regulations define "marked and severe functional limitations" as "a level of severity that meets, medically equals, or functionally equals the listings."[16]

The regulations set forth a three-part sequential test the Commissioner must follow when determining disability in children.[17] First, a child must show that the child is not performing substantial gainful activity.[18] Second, if the child is not working, the child must show that the child suffers from an impairment or combination of impairments that is severe.[19] Third, if there are severe impairments, the child must show that the child's impairments meet, medically equal, or functionally equal the

---

[14] 42 U.S.C. § 1382c(a)(3)(I).

[15] See 20 C.F.R. Pt. 416, Subpt I (2003); Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

[16] 20 C.F.R. § 416.902 (2007).

[17] 20 C.F.R. § 416.924(a) (2007).

[18] 20 C.F.R. § 416.924(b).

[19] 20 C.F.R. § 416.924(c).

severity of an impairment in the listings.[20] If the child does not meet all three criteria then the child is not disabled.

In addition to the three-part test, the Commissioner must find that the child's impairment meets the duration requirement, which means the impairment must be expected to result in death or to last longer than 12 months. If the child meets all three criteria and the duration requirement, then the child is disabled.[21]

Provisions for determining functional equivalence are established under 20 C.F.R. § 416.926a. Stated generally, to functionally equal a listed impairment, a child must demonstrate an "extreme" limitation in one domain of functioning, or show a "marked" limitation in two domains of functioning.[22] There are six domains of functioning to be considered: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.[23] A

---

[20] 20 C.F.R. § 416.924(d).

[21] 20 C.F.R. § 416.924(d)(1).

[22] 20 C.F.R. § 416.926a(a)

[23] 20 C.F.R. § 416.926a(b)(1).

"marked" limitation in a domain means that the child's impairment "interferes seriously with [their] ability to independently initiate, sustain, or complete activities."[24] An "extreme" limitation in a domain means that the child's impairment "interferes very seriously with [their] ability to independently initiate, sustain, or complete activities."[25]

### III. SUMMARY OF THE RECORD

#### A. <u>Hearing Testimony</u>

Plaintiff's guardian, Ms. Craig, testified that Plaintiff was in ninth grade at the time of the hearing. He did not get along with his siblings, became very angry, and caused physical damage to the house. He got into trouble at school, and in March 2010 he took a gun to school. Plaintiff told a counselor at school that he wanted to kill some other students. He subsequently was caught with a knife at a bus stop, and was moved from his middle school to the Horizon School for students with behavioral problems. Plaintiff had discipline problems at Horizon and after having other legal problems, including a trespassing charge, he was taken to the Juvenile Detention Center. Plaintiff reported auditory hallucinations

---

[24] 20 C.F.R. § 416.926a(e)(2).

[25] 20 C.F.R. § 416.926a(e)(3).

and spoke with "Dominique," the voice in his head.  Plaintiff underwent psychological evaluations by court order.  Plaintiff was prescribed medication for his mental problems but felt that the medication made him worse and stopped taking it.  He was ordered by the court to enter a mental health facility for youth.  At the time of the hearing, Plaintiff was preparing to enter tenth grade at a public high school.  R. 38-51.

### B.  ALJ's Assessment of Evidence and Conclusions

Plaintiff does not challenge the ALJ's finding that Plaintiff had less than marked or no limitation in the functional domains of acquiring and using information, moving about and manipulating objects, caring for oneself, and health and physical well-being.  *See* ECF No. 17.  Because the only issue for appeal is whether substantial evidence supports the ALJ's determination that Plaintiff did not have a marked limitation in a second functional area, attending and completing tasks, the Court's summary of the evidence focuses on that domain.[26]

---

[26] The Commissioner also argues that Plaintiff has failed to show that he has an "extreme" limitation in the domain of "interacting and relating with others."  ECF No. 18 at 14-15.  The Court does not read Plaintiff's brief as making this argument because Plaintiff specifically contends that the ALJ erred by not finding "marked limitations in two domains."  ECF No. 17 at 1, 6.  Although Plaintiff's brief includes a conclusional statement that his limitation in the domain of "interacting and relating with others" was "marked to extreme," Plaintiff makes no argument in support of this statement.

As the ALJ summarized, Plaintiff's school grades were generally poor, but Plaintiff also had a poor attendance record. R. 19, 198. Plaintiff was diagnosed with ADHD at Meridian Behavioral Healthcare in April 2011, and was prescribed Intuniv for ADHD and Risperdal for other mental problems. R. 19, 320. Plaintiff's progress notes reflect that he was noncompliant with his medications. R. 19, 270-75. However, in July 2011, Plaintiff was reported to be doing well overall and had good activities of daily living. R. 273.

In January 2012, Plaintiff underwent a competency examination by Dr. Umesh Mhatre in connection with pending criminal charges. R. 283-90. Dr. Mhatre determined that Plaintiff was not competent to proceed because he lacked the capacity to understand the charges against him and possible penalties, lacked the capacity to understand the adversarial system, and had limited capacity to assist his attorney. Dr. Mhatre's impression was: 1. ADHD; and 2. Impulse Control Not Otherwise Specified. R. 289. He recommended residential treatment and medications for ADHD and impulse control. *Id.*[27]

---

[27] As the Commissioner points out, Plaintiff included a photocopy of Dr. Mhatre's report in his brief but cites no specific error in the ALJ's assessment of the report.

In July 2012, Alvin Lawrence Jr., Ph.D., performed a psychological evaluation. R. 292-96. Plaintiff reported that he had not taken his ADHD medications for a month, and Dr. Lawrence observed that his symptoms were more prominent without medication. Plaintiff displayed psychomotor agitation but remained on task throughout the interview. His short-term memory appeared to show deficits and his ability to concentrate appeared variable. Plaintiff's mood was hypomanic and his affect was labile. Dr. Lawrence assigned Plaintiff a GAF score of 45, but the ALJ afforded "little weight" to the GAF score because Plaintiff had been off his medication.[28]

Plaintiff underwent another competency evaluation with Harry Krop, Ph.D., in March 2012. R. 276-82. Dr. Krop observed that Plaintiff's legal history included battery, burglary, and threats against the Dean of his school. At that time, Plaintiff was suspended from eighth grade for fighting. Plaintiff reported that he performed chores at home, including cleaning, taking out trash, and watching his younger cousins. Plaintiff's mental status examination revealed no evidence of a thought disorder or psychotic process. Testing revealed mild depression and a perception that no one

---

[28] Plaintiff included a photocopy of Dr. Lawrence's report in his brief but cites no specific error in the ALJ's assessment of the report.

cares about him.  Dr. Krop concluded that Plaintiff fully understood his legal options, he was manipulative and narcissistic, and he had serious emotional problems, but Plaintiff was competent to proceed with his criminal charges.  R. 280-81.[29]

In April 2012, Plaintiff underwent another competency evaluation with C. Russell Clifton, Ph.D.  R. 305-14.  Dr. Clifton determined that Plaintiff functioned in the average range of verbal reasoning and although he was an ESE student with a learning disability he had average verbal intelligence.  Plaintiff's most recent placement in an alternative school was due to disruptive behavior and not due to his learning difficulties.  R. 313.  Dr. Clifton noted that "[e]valuation of cognitive processes indicated that [Plaintiff's] attention and concentration skills were not significantly impaired."  R. 308-09.  He noted Plaintiff's history of noncompliance with medication and that "notes from Meridian suggest improvement with regular use."  Dr. Clifton strongly recommended that Plaintiff's program placement include the administration of appropriate medications.  R. 313.

---

[29]Plaintiff included a photocopy of Dr. Krop's report in his brief but cites no specific error in the ALJ's assessment of the report.

He concluded that Plaintiff was competent to proceed with his criminal charges.[30]

State agency psychological consultants reviewed the record. With regard to the functional domain of "attending and completing tasks," both consultants determined that Plaintiff had "less than marked limitations." R. 263, 299. The ALJ afforded these findings "some" weight as they were consistent with the objective mental findings of record and Plaintiff's lack of compliance with prescribed medication. R. 22.

The ALJ found that Plaintiff's records showed that his impairments were not as limiting as alleged. Specifically, although Plaintiff has a history of ADHD and learning disability for which he was placed in ESE classes, his intellectual functioning was considered low average to average and he progressed in school until middle school when his attendance became "problematic." R. 21. Plaintiff's placement in alternative schools was due to behavioral actions that were not considered a manifestation of his disability. The ALJ observed that the record reflected consistent non-compliance with prescribed medication. R. 22.

---

[30]Plaintiff included a photocopy of Dr. Clifton's report in his brief but cites no specific error in the ALJ's assessment of the report.

In making findings regarding functional limitations caused by Plaintiff's impairments with respect to the domain of "attending and completing tasks," the ALJ explained that "[t]his domain considers how well a child is able to focus and maintain attention, and how well he is able to begin, carry through, and finish activities, including the mental pace at which he performs activities and the ease of changing activities.  Attending and completing tasks also refers to a child's ability to avoid impulsive thinking and his ability to prioritize completing tasks and manage his time." R. 23 (citing 20 C.F.R. 416.926a(h) and SSR 09-4p).

The ALJ found that the record supported a conclusion that Plaintiff had "less than marked" limitation in this domain.  While acknowledging that Plaintiff had "some difficulty" in attending and completing tasks due to ADHD, the ALJ observed that Plaintiff's functional abilities improved when he remained compliant with prescribed medication.  The ALJ further observed that Plaintiff reported being able to complete household chores. R. 24.

## IV.  DISCUSSION

Plaintiff contends that the ALJ erred by not finding that he had marked limitation in the domain of attending and completing tasks, in

addition to his marked limitation in interacting and relating with others. As support for his argument, Plaintiff points to a December 2005 individualized education plan (IEP) that identified him as being off task 60% of the time he was being observed, a May 2010 IEP that provided additional time (1.5 times) for testing, and other evidence documenting Plaintiff's learning and social difficulties. ECF No. 17 at 7. These records, however, predate Plaintiff's treatment with ADHD medication at Meridian beginning in April 2011.

In concluding that Plaintiff's limitation was less than marked,[31] the ALJ relied heavily on record evidence that Plaintiff was noncompliant with his ADHD and other prescribed medications and evidence, such as the Meridian notes, that his condition was stable when he was on medication. *See* R. 270. Based on the record evidence, the ALJ found that Plaintiff's functional abilities in this domain improved when he was on medication. R. 24. Plaintiff does not explain how this finding is not supported by substantial evidence. A refusal to follow prescribed medical treatment, without good reason, can preclude a finding of disability. *See Dawkins v.*

---

[31] A "marked" limitation in a domain means that the child's impairment is "more than moderate" but "less than extreme" and "interferes seriously with [their] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2).

*Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988).  "'A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling.'" *Dawkins*, 848 F.2d at 1213 (quoting *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987)).  In the context of an adult disability claim, the ALJ must find that had the claimant followed the prescribed treatment, the claimant's ability to work would have been restored.  *See Dawkins*, 848 F.2d at 1213.

In this case, concerning a claim of child disability, the ALJ's finding that Plaintiff's functional abilities improved when he was on medication satisfy this requirement.  *See Burch o/b/o TJS v. Colvin*, 2013 WL 2384099 *6 (S.D. Ga. 2013) (applying *Dawkins* in context of child disability claim to conclude that ALJ's finding that plaintiff's ADHD was considerably improved when she was compliant with her medication, and therefore was not disabling, was supported by substantial evidence).   Plaintiff makes no argument that he had a good reason to refuse to follow the prescribed medical treatment for his ADHD.

Accordingly, for these reasons,  the Court concludes that substantial evidence supports the ALJ's finding that Plaintiff has less than marked limitations in the domain of attending and completing tasks and thus, with

only one marked limitation, Plaintiff's impairment does not medically equal, or functionally equal the criteria for any listed impairment.

## V. CONCLUSION

For the foregoing reasons, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED.**

**IN CHAMBERS** at Gainesville, Florida, this 26th day of February, 2016.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.